270 So.2d 413 (1972)
Tolly VINIK and Elsie J. Vinik, His Wife, Appellants,
v.
Leonard TAYLOR and Evelynn J. Taylor, His Wife, Appellees.
No. 71-1030.
District Court of Appeal of Florida, Fourth District.
December 12, 1972.
*414 Linwood Cabot of Cabot Scott Wenkstern & Casteel, Fort Lauderdale, for appellants.
Harry G. Carratt of Morgan Carratt & O'Connor, and Emerson Allsworth of Allsworth Doumar & Schuler, Fort Lauderdale, for appellees.
WALDEN, Judge.
Condominium apartment buildings  what are the rights and privileges (and limitations thereon) of the individual unit owners?
The protagonists  plaintiffs and defendants  each side own an apartment unit in the Four Seasons. It is a thirteen story luxury building containing eighty-one apartments units, which units have multiple open balconies of like appearance.
Defendants wished to enclose two of their balconies and, with the permission of *415 the Four Seasons Board of Directors,[1] proceeded to do so.[2]
Plaintiffs seasonably objected and sought an injunction. Being unsuccessful, they appeal. We affirm.
The answer to the issue is found in the analysis of portions of Chapter 711, Laws of 1969, entitled Condominiums and Cooperative Apartments, together with the Four Seasons Declaration of Condominium enacted thereunder.
It is the position of the plaintiffs (objectors) that the approval of the Directors was insufficient and that approval of 75% of the unit owners was required under Section 5.2(b) of the Declaration,[3] which section deals with the alteration of common elements.
The defendants contend that the balconies were not common elements and that, hence, it was sufficient to obtain permission of the Directors under Section 5.1(c) of the Declaration.[4]
The basic or determinative question as we see it is whether or not the balconies were common elements.[5] Common elements *416 are all parts of the improvements which are not included within the units.[6] Are balconies included within the unit? The answer is yes, per Section 3.6(b)(1) of the Declaration.[7]
To sum up with reference to alterations, same can be undertaken by unit owners on a common element only with the approval of 75% of the unit owners. Where, as here, the alteration is to be directed to a portion of a unit, as opposed to a common element, same is divisible as follows: (a) if the part of the unit is maintained by its owner, no prior approval is required,[8] (b) if the alteration is directed to a portion of the unit to be maintained by the Association (which is the case here), same can be accomplished by the prior approval of the Board of Directors.[9]
But the real thrust as concerns the plaintiffs' (objectors) position is found in Section 711.13, F.S. 1969, F.S.A., which provides as follows:
"711.13 Maintenance; limitation upon improvement
"(1) The maintenance of the common elements shall be the responsibility of the association.
"(2) There shall be no material alteration or substantial additions to the common elements except in a manner provided in the declaration.
"(3) No unit owner shall make any alterations in the portions of the improvements of a condominium which are to be maintained by the association or remove any portion thereof, or make any additions thereto, or do any work which would jeopardize the safety or soundness of the building containing his unit or impair any easement."
They maintain that, pursuant to Section 5.1(a)(2) of the Declaration,[10] the maintenance of the balconies was the function of the Association and this is true. Therefore, plaintiffs maintain that under Section 711.13(3), supra, the defendants had no right to make the alteration except as in the case of a common element, inasmuch as the balconies were to be maintained by the *417 Association. From an extremely narrow and selective view, this position has a certain persuasion. However, we feel, as did the trial court, that the several provisions of Section 711.13 must be read in pari materia and that such section, as relied upon, is directed to common elements maintained by the Association. But, repetitively, the balconies by specific provisions cited herein are not common elements, but parts of the unit. The controlling portion of the Declaration is found at Section 5.1(c),[11] which specifically provides with reference to portions of the unit that are to be maintained by the Association, alterations can be made simply upon receiving the approval of the board.
We have reviewed this dispute in some detail in light of the discussion of the Honorable Russell McCaughan, found in "The Florida Condominium Act Applied," 17 U.Fla.L.Rev. 1 (1964), Mr. McCaughan being one of the authors of Chapter 711, supra, and one of the acknowledged authorities in the field of condominium law, and feel that our constructions are not inconsistent.
Such difficulties as we have had with this appeal have, upon reflection, been engendered by a peripheral opinion which falls outside the scope of our appellate judicial function. Quite frankly we are in disagreement with the decision reached by the Board, in approving this alteration by the defendants, as we feel, as did the objectors, that the alteration materially changed the exterior appearance of the building. If succeeding applicants are loosely granted such approval, it could lead to a hodge-podge or bizarre outward appearance, with some balconies enclosed and some not, and different architectural treatments given sway. It could very well harm or destroy the symmetry and attractiveness of the building as a whole. Regardless, this is not our problem. The unit owners have clearly delegated this discretion and authority to their elected Board of Directors. If they are aggrieved, they can make their views known to their Board of Directors and obtain redress, or else, replace the Board according to the Bylaws. They can, from a reading of the Declaration, amend the Declaration so as to make the balconies a part of the common elements, among other things.
In sum, we are completely persuaded that the able trial court correctly concluded that plaintiffs were not entitled to an injunction.
Affirmed.
REED, C.J., concurs.
MAGER, J., concurs in conclusion only.
NOTES
[1] The Board consists of from three to eleven members elected by vote of the unit owners. Four Seasons Bylaws, § 3.
[2] For illustration, the author's conception of the alteration as gleaned from the record is as follows: (Not drawn to scale.)

[3] "5. Maintenance, alteration and improvement. Responsibility for the maintenance of the condominium property, and restrictions upon the alteration and improvement thereof, shall be as follows: * * *.2 Common elements. * * * (b) Alteration and improvement. There shall be no alteration nor further improvement of the common elements or acquisition of additional common elements without prior approval in writing by the record owners of not less than 75% of the common elements except as provided by the Bylaws. Any such alteration or improvement shall not interfere with the rights of any unit owners without their consent... ." (Emphasis supplied.)
[4] "5. Maintenance, alteration and improvement. Responsibility for the maintenance of the condominium property, and restrictions upon the alteration and improvement thereof, shall be as follows: * * *.1 Units. (a) By the Association. The Association shall maintain, repair and replace at the Association's expense * * * (2) balconies, except the painting of floors and the inside of parapets.; * * * (c) Alteration and improvement. Except as elsewhere provided, neither a unit owner nor the Association shall make any alterations in the portions of a unit that are to be maintained by the Association, or remove any portion of such, or make any additions to them, or do anything that would jeopardize the safety or soundness of the apartment building, or impair any easement, without first obtaining approval in writing of owners of all units in which such work is to be done and the approval of the board of directors of the Association. A copy of plans for all of such work prepared by an architect licensed to practice in this state shall be filed with the Association prior to the start of the work." (Emphasis supplied.)
[5] Balconies are not limited common elements here and hence the case of Sterling Village Condominium, Inc. v. Breitenbach, Fla.App. 1971, 251 So.2d 685, has no application as its Declaration was differently framed.
[6] F.S. 711.06, F.S.A. Common Elements, (1) Common elements includes within its meaning the following items: * * *

(b) All parts of the improvements which are not included within the units.
[7] "3. Development plan. The condominium is described and established as follows: * * *.6 Unit boundaries. Each unit shall include that part of the building containing the unit which lies within the boundaries of the unit, which boundaries are as follows: * * * (b) Perimetrical boundaries. The perimetrical boundaries of the unit shall be the following boundaries extended to an intersection with the upper and lower boundaries: (1) Exterior building walls  the vertical planes adjacent to and which include the exterior of the outside walls of the building bounding a unit and fixtures thereon, and when there is attached to the building a balcony, loggia, patio, terrace, canopy, stairway or other portion of the building serving only the unit being bounded, such boundaries shall be the intersecting vertical planes adjacent to and which include all of such structures and fixtures thereon."
[8] "5. Maintenance, alteration and improvement. Responsibility for the maintenance of the condominium property, and restrictions upon the alteration and improvement thereof, shall be as follows: * * *.1 Units. * * * (b) By the unit owner. The responsibility of the unit owner shall be as follows: (1) To maintain, repair and replace at his expense all portions of his unit except the portions to be maintained, repaired and replaced by the Association... ."
[9] See footnote No. 4.
[10] "5. Maintenance, alteration and improvement. Responsibility for the maintenance of the condominium property, and restrictions upon the alteration and improvement thereof, shall be as follows: * * *.1 Units. (a) By the Association. The Association shall maintain, repair and replace at the Association's expense * * * (2) balconies, except the painting of floors and the inside of parapets.;"
[11] See footnote No. 4.