505 So.2d 464 (1987)
DAYTONA DEVELOPMENT CORPORATION, a/k/a Daytona Corporation, a Florida Corporation; K.D. Sauder, a/k/a Kenneth D. Sauder, and Anita L. Sauder, His Wife; Gregg, Inc., a Florida Corporation, Cleardale, Inc., a Florida Corporation, Appellants,
v.
Donald O. McFARLAND; Phillips, McFarland, Gould, Wilhelm & Wagstaff, P.A., a Florida Professional Corporation, Formerly Phillips, McFarland, Gould & Kornes, P.A., a Florida Corporation; Gulf Insurance Co.; United States First Insurance Co.; and Select Insurance Co., Appellees.
No. 86-1174.
District Court of Appeal of Florida, Second District.
February 11, 1987.
Rehearing Denied April 8, 1987.
*465 Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, and Wagner, Cunningham, Vaughan, & McLaughlin, P.A., Tampa, for appellants.
A. Broaddus Livingston, John W. Boult and Sylvia H. Walbolt of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellees.
LEHAN, Judge.
Plaintiffs appeal from a summary judgment entered in favor of defendants in this complex legal malpractice suit. Defendants are an individual attorney, his law firm, and his insurers. The suit involves the attorney's allegedly negligent work for plaintiffs, developers of a three building condominium complex, regarding an interest to be retained by the developers in connection with recreation facilities. (We will hereafter use the singular, "developer.") Although it has been held that the attorney in drafting the condominium documents did not reserve for the developer title to the recreation facilities, Daytona Development Corp. v. Bergquist, 308 So.2d 548 (Fla. 2d DCA 1975), nonetheless a valid interest of the developer in a use agreement for the facilities was, after further litigation, found to exist. Sauder v. Harbour Club Condominium No. Three, Inc., 346 So.2d 556 (Fla. 2d DCA 1977), cert. denied, 355 So.2d 514 (Fla. 1978). (Although several use agreements are involved in this case, we will hereafter use the singular, "use agreement.") We reverse.
The basis for the summary judgment was the trial court's conclusion that the attorney accomplished what he was employed to accomplish, i.e., the creation of the interest in a use agreement found in Sauder to exist which entitled the developer to payments from condominium unit owners for their use of the recreation facilities. The court on that basis in effect concluded that there had been no actionable failure to measure up to the requisite standard of care.
The developer argues that although in Sauder this court found that the developer had a valid interest in a use agreement for the recreation facilities, this court in that case also approved of certain deductions made and to be made from payments from condominium unit owners under that agreement. Accordingly, the developer argues that his interest was only theoretically a valid interest. The argument is that the attorney's work provided the developer with a less than fully enforceable interest. We agree that there is a fact issue in this regard precluding the summary judgment. See Davis v. Hathaway, 408 So.2d 688, 689 (Fla. 2d DCA 1982). That issue involves whether the deductions in payments to the developer referred to in Sauder are compensable losses proximately resulting from the attorney's conduct or, as the attorney argues, proximately result from actions of condominium unit owners and the developer. See Tieder v. Little, 502 So.2d 923 (Fla. 3d DCA 1987). If those deductions are found to be the proximate result of the attorney's conduct, and, accordingly, it is found that the attorney did not entirely accomplish what he was employed to accomplish, *466 then there would be a further issue as to whether the attorney's conduct in that respect measured up to the requisite standard of care. We conclude that the trial court erred in granting the summary judgment on the basis that there was no issue of fact as to whether the attorney accomplished for the developer entirely what the attorney was employed to accomplish.
The developer also argues that, as was held in Bergquist, the attorney failed to reserve title to the recreation facilities for the developer and that testimony creates a fact issue as to whether the attorney's conduct in that respect was below the requisite standard of care. The argument is to the effect that even to the extent the attorney's conduct did, pursuant to Sauder, provide the developer with an enforceable interest in the use agreement, the attorney should be liable for resulting losses allegedly suffered by the developer from that failure to reserve title. This might involve the question of whether an attorney's conduct which accomplishes the end which the attorney was employed to accomplish (here an enforceable interest in the use agreement) nonetheless may constitute actionable malpractice if the means used by the attorney (which here did not provide the developer with title to the recreation facilities) fell below the requisite standard of care and proximately caused loss to the client. In this regard compare Dillard Smith Construction Co. v. Greene, 337 So.2d 841, 843 (Fla. 1st DCA 1976) (a lawyer who is employed to render advice as to a contract and who, without reading the contract, renders advice which might have been given by a lawyer who read the contract is not necessarily shielded from liability for malpractice) with Lawyers Professional Liability Insurance Co. v. McKenzie, 470 So.2d 752, 754 (Fla. 3d DCA 1985) ("[T]he attorney, though negligent, did in fact do what he was employed to do.") But that question is not necessarily involved here, and we should not and do not answer it. The reason is that there is another related issue which, if resolved in favor of the developer, would render the question moot. See, e.g., Murphy White Dairy, Inc. v. Simmons, 405 So.2d 298, 300 (Fla. 4th DCA 1981); Messina v. Baldi, 120 So.2d 819, 821 (Fla. 3d DCA 1960). That issue is the issue of fact as to whether in this case the attorney was employed to accomplish not only a particular end but also to accomplish that end by a particular means. In this regard there is testimony in the record which, under the test applicable to possible issues precluding summary judgment, see Peterson v. Powell, 501 So.2d 140 (Fla. 2d DCA 1987), could be construed to create a fact issue concerning allegations in the complaint that the attorney was employed "to cause a certain recreational property/facilities to be excluded from the condominium declaration so that a valid lease agreement could be established in favor of [the developer] as to recreational facilities and that he failed to do so." (Emphasis added.) Although, as we have said, a valid use agreement entitling the developer to payments from condominium unit owners (except for deductions) was, after litigation, ultimately held to have been established, it was so held notwithstanding the inclusion of the recreational facilities within the condominium common elements. See Sauder; Bergquist. Thus, with respect to the means used to accomplish the end the attorney was employed to accomplish, there are issues of fact as to whether the attorney provided what he was employed to provide and, to the extent he did not, whether his conduct was the proximate cause of compensable losses, see Tieder; Davis, and fell below the requisite standard of care.
The attorney raises an issue as to whether the developer's prior allegations and testimony should equitably estop the developer from now claiming damages due to the attorney's failure to reserve title to the recreation facilities for the developer. The trial court's summary judgment did not address this issue. The arguments and counterarguments disagree as to just what the developer's prior position was in this regard. Under the particular circumstances of this case and because a resolution of this issue requires determinations of factual *467 questions, we do not decide the issue here. See Brewer v. Vandervalk, 374 So.2d 553 (Fla. 3d DCA 1979).
We agree with the attorney that the facts that his work was challenged, that litigation ensued, and that the developer lost in Bergquist (and, as we have said, could be considered to have not entirely won in Sauder) do not by themselves establish a violation by the attorney of the requisite standard of care and that an attorney who drafts documents is not ipso facto a guarantor that the documents will be litigation free or will accomplish everything the client might want. See Dillard, 337 So.2d at 843 ("A lawyer does not guarantee the efficacy of his advice.") The rationale is that if there were malpractice liability under those circumstances, an attorney would in effect insure his work; but since insurance coverage ordinarily calls for premium payment, attorneys fees would then inevitably increase substantially to provide for that type of insurance. But these aspects do not justify the trial court's disposition in favor of defendants at this stage.
We have addressed the basic issue presented to us on this appeal and decided by the trial court  whether there was a genuine issue of fact as to whether the attorney's conduct fulfilled the requisite standard of care. Although the arguments also refer to various damage aspects, suffice it to say that, for the reasons given above, we also do not conclude that there is no issue in that regard so as to justify the summary judgment.
Reversed and remanded for proceedings consistent herewith.
RYDER, A.C.J., and SANDERLIN, J., concur.