[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11141
_____

D.C. Docket No. 8:11-cv-01100-JDW-TGW


MICHAEL McGEE, et al.,

Plaintiffs-Appellants,

versus

COMMONWEALTH LAND TITLE INSURANCE COMPANY, et al.,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 12, 2013)


Before PRYOR, JORDAN, and KLEINFELD,* Circuit Judges.

PER CURIAM:

_____

* Honorable Andrew Kleinfeld, United States Circuit Judge for the Ninth Circuit, sitting by designation.

The plaintiffs, a group of individuals who purchased units in an unsuccessful condominium development project, filed suit against Commonwealth Land Title Insurance Company alleging they were entitled to collect on their title insurance policy. The district court dismissed the complaint for failure to state a claim, and the plaintiffs filed this timely appeal. Following oral argument, and review of the record and the parties' briefs, we affirm.

## I.

This case arises out of a real estate deal gone bad. On November 17, 2005, a real estate developer filed a 60-page "Declaration of Sarasota Cay Club Condominium" with the clerk of court for Manatee County, Florida. The declaration provided a detailed description of various aspects of the Sarasota Cay Club condominium development, such as rules for buying insurance premiums, the required method of assessment collection, and the portions of the Club defined as "Common Elements." A map and further details, attached to the declaration as an exhibit, boasted of elegant floor plans, a large swimming pool, and a "no children" policy.

Sometime after the declaration was filed, the plaintiffs individually purchased a number of units in the condominium development project. The development, however, was never completed, and the plaintiffs did not receive the units they had bought.

2

On May 18, 2011, the plaintiffs filed suit against approximately 70 defendants, alleging that they were defrauded by nearly every person and entity that was involved in their real estate transaction. The district court severed the complaint into seven actions.

This appeal pertains to the plaintiffs' suit against Commonwealth, the company from which the plaintiffs purchased title insurance. The plaintiffs alleged in their complaint that they received defective title to their purchased Sarasota Cay Club units, entitling them to collect on their title policy, because the 60-page Sarasota Cay Club declaration was defective and therefore legally did not create a condominium development.[1]

As noted, the district court granted Commonwealth's motion to dismiss pursuant to Rule 12(b)(6). The court concluded that under Fla. Stat. § 718.110(10) (2010), a declaration is effective to create a condominium, despite any fatal defects, so long as no action is brought within three years from the recording of the declaration to determine whether it complies with the mandatory requirements for the formation of a condominium. Noting that the plaintiffs' suit fell well outside of that three-year window, the district court reasoned the declaration must have

---

[1] The plaintiffs alleged the declaration was defective because there were no common elements and because the declaration's "joinder," which involved the owner of the land on which the development would be built conveying his rights for purposes of establishing the condominium, was invalid.

3

created a condominium under Florida law. After dismissal, this timely appeal ensued.

## II.

"We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008). We review "questions of statutory interpretation *de novo*." *United States v. Anton*, 546 F.3d 1355, 1357 (11th Cir. 2008). "As a federal court sitting in diversity jurisdiction, we apply the substantive law of the forum state, in this case Florida, alongside federal procedural law*." Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011).

## III.

We conclude that the district court properly granted Commonwealth's motion to dismiss. Simply stated, Fla. Stat. § 718.110(10) (2010) bars the plaintiffs from arguing that purported errors in the Sarasota Cay Club declaration prevented the document from creating a condominium development.[2]

---

[2] We expressly limit our holding to the version of § 718.110(10) in existence at the time the plaintiffs filed their action. In 2013, the Florida Legislature materially amended the statute.  Our decision does not reach any of the plaintiffs' other claims which are not before us.  We only hold

4

Under Florida law, a condominium is a creature of statute, and is created by recording a condominium declaration in the public records of the county where the land is located. *See* Fla. Stat. § 718.104(2) (2002). *See also Tranquil Harbour Dev., LLC v. BBT, LLC*, 79 So. 3d 84, 87 (Fla. 1st DCA 2011). Although § 718.104(4) contains an explicit list of what a declaration "must" contain, § 718.110(10) provides a period of repose for challenges to a defective declaration. Under § 718.110(10), if an action to determine whether a declaration complies with the mandatory requirements for the formation of a condominium is not brought within three years from when the declaration was recorded, the declaration will generally create a condominium:

> If an action to determine whether the declaration or another condominium document complies with the mandatory requirements for the formation of a condominium is not brought within 3 years of the recording of the declaration, the declaration and other documents shall be effective under this chapter to create a condominium, as of the date the declaration was recorded, whether or not the documents substantially comply with the mandatory requirements of law.

In our view, the plain language of § 718.110(10) severely limits the plaintiffs' argument that alleged defects in the Sarasota Cay Club declaration precluded the document from creating a condominium development. *See Daniels v. Fla. Dept. of Health*, 898 So. 2d 61, 64 (Fla. 2005) ("When the statute is clear and unambiguous

---

that, as far as the plaintiffs' claims against their title insurance company are concerned, the claim that the declaration failed to create a condominium development is barred.

5

. . . the statute's plain and ordinary meaning must control, unless this leads to an unreasonable result or a result clearly contrary to legislative intent.").

We need not decide the full sweep of this provision, nor must we determine whether an unchallenged declaration could make a mere pile of bricks a condominium. We conclude only that, at the very least, a condominium is created as a matter of Florida law where, as here, a declaration includes statutorily recognized common elements,[3] and the declaration is not challenged within the three year period prescribed by § 718.110(10). *Cf. Daytona Dev. Corp. v. Bergquist*, 308 So. 2d 548, 550 (Fla. 2d DCA 1975) ("[O]ne must reach the inescapable conclusion that all condominium units have an undivided share of the common elements and neither can exist separately from the other."). [4]

## IV.

---

[3] As the district court properly explained, common elements are defined under Fla. Stat. § 718.108(1) as, among other things, "[a]n easement of support in every portion of a unit which contributes to the support of a building," and the Sarasota Cay Club declaration adopted this definition in defining its own common elements.

[4] The plaintiffs repeatedly rely in their briefs on an email from the Division of Florida Condominiums, Timeshares, and Mobile Homes, a Florida administrative agency, concluding that a Sarasota Cay Club declaration failed to include common elements. The email, however, states that the declaration the Division reviewed was in existence as of June 13, 2005, whereas the declaration at issue here was first signed in July 21, 2005, and was not even filed until November 17, 2005. The Division also asserted in its email that the June 2005 declaration included language stating that "there are NO common elements," language which is not in the declaration at issue here. Nevertheless, the plaintiffs contend we should "assume" that the version examined by the Division was a "draft" of the declaration at issue here. *See* Appellant's Br. at 29 n.3. We need not assume any such thing; the documents are different, and the declaration filed on appeal very clearly includes common elements.

The district court's decision is affirmed.

**AFFIRMED.**